**In Re: Appeal of Arthur Shore From Decision of Board of Supervisors of Solebury Township**

*Stephen B. Harris,* for plaintiff.
*Richard P. McBride, Jr.,* for defendant.

BIESTER, JR., *J.*, December 5, 1983—This is an appeal from the decision of the Board of Supervisors of Solebury Township denying appellant's application for a curative amendment to provide for a mobile home park to be located upon tax parcels no. 41-8-39 and no. 41-8-40. Appellant challenges the Solebury Township Zoning Ordinance and Map as unconstitutional and invalid by reason of its total exclusion of mobile home parks from Solebury Township.

The board made findings of fact and conclusions of law upon which it based its decision. The court did not take any supplementary evidence or testimony. Therefore, our review of the board's decision is limited to a determination of whether the board committed an abuse of discretion or error of law. Miller v. Warminster Township Board of Supervisors, 38 Bucks Co. L. Rep. 102 (1982). This court may not disturb the findings of the board if they are supported by substantial evidence. 53 P.S. §1101.

As is apparent from the recitation in both appellant's and appellee's briefs, the history of the case is agreed upon and is essentially as follows:

Appellant, Arthur Shore, is equitable owner of the tax parcels in question. The two parcels are located at the easterly edge of Lahaska in Solebury Townsip, Bucks County, Pa. on opposite sides of Route 202. On January 7, 1980, appellant filed two curative amendment applications with the Board of Supervisors of Solebury Township. One application requested that the zoning ordinance be amended to provide for mobile home parks on parcel no. 41-8-39. That parcel is zoned RC-Rural Commercial which permits a range of commercial land uses. This application challenged the zoning ordinance on the grounds of an alleged total exclusion of mobile home parks from the township. The other cura-.

tive amendment application requested that the zoning ordinance be amended to provide for single family detached dwellings on lots of 10,000 square feet on parcel no. 41-8-40. This parcel is zoned R-1 Residential which permits such dwellings but requires one acre parcels. This latter application challenged the zoning ordinance on the grounds of alleged "unnecessary and arbitrary exclusion of moderately-sized single-family detached building lots (8,000 square feet to 12,000 square feet) from the entire Township. . . ." The petition claimed that this exclusion prevents a "portion of the population" from living in the township.

In accordance with the provisions of section 609.1 of the Pennsylvania Municipalities Planning Code, the proposals were submitted to the Bucks County Planning Commission for review. By memorandum dated February 20, 1980, the commission concluded that the Solebury Township Zoning Ordinance was valid and recommended that the curative amendment application dealing with single family detached dwellings not be adopted. The commission did not discuss the alleged exclusion of mobile home parks.

On March 4, 1980, appellant withdrew the curative amendment application for parcel no. 41-8-40 dealing with single-family detached dwellings and submitted a new curative amendment application for both parcels requesting the township amend its zoning ordinance to provide for a mobile home park on both parcels. In this application, appellant again challenged the zoning ordinance as unconstitutional for failing to provide for mobile home parks. The application was consolidated with the prior mobile home park curative amendment application for the purpose of holding hearings thereon.

The township conducted 16 hearings on the application beginning on May 8, 1980 and concluding on July 22, 1981. At the conclusion of the hearings, by decision dated September 15, 1981, the board of supervisors denied appellant's request for a curative amendment for the aforementioned parcels of land. The instant appeal followed.

The Solebury Township Board of Supervisors, appellee, contends that the Solebury Township Zoning Ordinance is not unconstitutionally defective by reason of its alleged exclusion of mobile home parks from Solebury Township. In support of its position, appellee first argues that mobile home parks are a permitted use in Solebury Township.

The board made the following finding:

"21. In Solebury Township mobile homes are treated as single family dwellings and may be located on lots as small as Twenty Thousand (20,000) square feet in the VR-Village Residential District. Mobile homes are also permitted in all other residential districts including the R-1 district. *There is no restriction in the Solebury Township Zoning Ordinances or Sub-Division Ordinance which would prevent the sub-division of an R-1, VR or other residential tract into lots which could be rented for a mobile home park.*" (Findings of Fact, p. 5) (Emphasis added).

In its conclusions of law the board stated:

"1. The Solebury Township Zoning Ordinance is not unconstitutional for failing to provide for mobile home parks or mobile homes as they are a permitted use in Solebury Township." (Conclusions of Law, p. 21).

While the Solebury Township Zoning Ordinance defines "mobile home park" and "trailer park", it makes no provision whatsoever for mobile home parks as a use in any zoning district. The board

found, as set forth above, that nothing in the ordinance prevents the development of mobile home parks in the R-1 or VR districts or any other residential district. This finding is not supported by substantial evidence and must be rejected. In fact, this finding directly contradicts the plain meaning of the ordinance itself.

The zoning ordinance divides the township into seven types of districts. The regulations that govern each district set forth the uses that are permitted in that district. In the use regulations for each district the list of permissible uses is predicated by the following language:

"A building or other structure may be used, occupied, erected, built or altered, and a lot or tract of land may be used or occupied for any of the following purposes *and no other.*" (Emphasis added).

Mobile home parks are not included in any of the lists of permissible uses. They are therefore excluded from the township by virtue of the above quoted language. Furthermore, the ordinance contains no provisions whereby a mobile home park would be permitted as a conditional use, special exception or in any other manner.

We find it important to note that the board made its finding that mobile home parks are permitted after the Bucks County Planning Commission issued a memorandum which reached the contrary conclusion. The commission issued the memorandum, dated April 2, 1980, after the curative amendment proposed had been submitted to it for review. The memorandum set forth the following conclusion:

"1. The current Solebury Township Zoning Ordinance does not provide for mobile home parks and therefore excludes a reasonable and legitimate

housing type as defined by the courts of this Commonwealth." BCPC no. 41-80-2 p. 8.

While the zoning ordinance does permit individual mobile homes in any district where single family dwellings are permitted, it requires, however, that "For the purposes of this ordinance any inhabited trailer or mobile home shall be a single family dwelling and as such, be subject to all applicable regulations in this or other Township ordinances." Thus mobile homes are subject to the same lot restrictions as single family dwellings. The smallest lot size permitted by the ordinance for a single-family detached dwelling is 20,000 square feet in the VC-Village Commercial and VR-Village Residential Districts.

In Miller v. Warminster Township Board of Supervisors, supra, this court, speaking through President Judge Garb, made it clear that providing for mobile homes on individual lots is no substitute for mobile home parks.

". . . Mobile home parks have been held repeatedly to be a recognized and accepted land use for development of residences and an ordinance that does not provide for land use as mobile home parks is exclusionary in that respect. See Appeal of Hume Village, 51 Pa. Commw. 465, 414 A.2d 768 (1980). Where there is no provision in the zoning ordinance for mobile home parks, *the mere fact that mobile homes may be installed as a single family dwelling unit within the Township does not save the ordinance from its unconstitutionally exclusive effect.* See Environmental Communities of Pennsylvania, Inc. v. North Coventry, 49 Pa. Commw. 167, 412 A.2d 650 (1980) and Whitemarsh Township v. Kravitz, 39 Pa. Commw. 306, 395 A.2d 629 (1978)." 38 Bucks Co. L. Rep. at 105 (Emphasis added).

For the above stated reasons we find that the Solebury Township Zoning Ordinance excludes mobile home parks from Solebury Township. We must, therefore, determine whether such exclusion is unconstitutional.

Our court in Miller v. Warminster Township Board of Supervisors, supra, relied upon a series of Commonwealth Court cases, specifically Villa, Inc. v. Zoning Hearing Board, 57 Pa. Commw. 221, 426 A.2d 1209 (1981). Miller held that the exclusion of mobile home parks is unconstitutional within the meaning of Girsh Appeal,[1] in light of Girsh Appeal's focus on the exclusion of people in exclusionary zoning cases, regardless of the number of other different and diffuse forms of high density zoning permitted, since the exclusion of mobile home parks results in the exclusion of that portion of the population who cannot afford to purchase any of the other, more expensive types of residences. Thus, under Miller, the Solebury Township Zoning Ordinance would be unconstitutional by virtue of its total exclusion of mobile home parks despite the fact that it provides for other types of multi-family dwellings.

The issue presented in this case is whether the principles set forth in Miller should still control in light of the recent Supreme Court decision in In re Appeal of M. A. Kravitz Co., Inc. v. Board of Supervisors of Wrightstown Township, 501 Pa. 200, 460 A.2d 1075 (1983) and the Commonwealth Court's first post-Kravitz decision in Fernley v. Board of Supervisors of Schuylkill Township, 76 Pa. Commw. 409, 464 A.2d 587 (1983).

---

1. 437 Pa. 237, 263 A.2d 395 (1970) (held that failure to provide for apartments, where township made no provision for any type of multi-family dwelling, was unconstitutionally exclusionary).

In Kravitz, the Commonwealth Court, following its line of decisions which interpreted and applied Girsh, held the Wrightstown Township Zoning Ordinance to be unconstitutionally exclusionary due to its failure to provide for the development of townhouses. The Supreme Court reversed; the plurality concluding that the Commonwealth Court had misinterpreted the Supreme Court's exclusionary zoning decisions. The plurality announced that the inquiry was not simply whether a separate and distinct residential use is excluded but rather whether the ordinance operates to exclude population growth.

". . . As applied to residences, we have found ordinances which fail to provide for a particular use unreasonable where they exclude population growth generally. Girsh Appeal. We have never found an ordinance unreasonable solely because it fails to provide for a particular use. We will not do so here." 501 Pa. at 211, 460 A.2d at 1081.

Thus the plurality rejected the notion that a zoning ordinance which excludes a legitimate and distinct housing type is unconstitutional per se and directed that an inquiry be made into whether the exclusion of a particular residential use is accompanied by the exclusion of population growth in general. In order to find an ordinance unconstitutional by virtue of its exclusion of population growth, the plurality took the position that the reviewing court must evaluate each and every element of the test established in Surrick v. Zoning Hearing Board of Providence Township, 476 Pa. 182, 382 A.2d 105 (1977).

In Surrick, supra, the Supreme Court set forth a three-step analysis for reviewing zoning ordinances alleged to be exclusionary. The first inquiry must be whether the community in question is "a logical area for development and population growth" con-

sidering its proximity to a large metropolis and projected population growth figures for the community and the region. 476 Pa. at 192, 382 A.2d at 110. If the community is "in the path of urban-suburban growth" the present level of development within the community must be examined considering population data, the percentage of total undeveloped land and the percentage available for the development of multi-family dwellings.

If the community is in the path of development and is not already highly developed then the issue of the ordinance's exclusionary impact is reached. The first question is whether the exclusion of multi-family dwellings is total or partial. In the case of partial exclusion, the ordinance will be held to be unconstitutionally exclusionary where the amount of land zoned to be available for multi-family dwellings is disproportionately small compared to population growth pressure in the community and region and the amount of land in the community still available for development. 476 Pa. at 194, 382 A.2d at 111.

Appellant Shore argues that the exclusion of mobile home parks is invalid unless the township can demonstrate that the exclusion is essential for the preservation of public health, safety, morals and general welfare citing Exton Quarries, Inc. v. Zoning Board of Adjustment, 425 Pa. 43, 228 A.2d 169 (1967).

We do not understand appellant to argue that exclusion of mobile home parks, as a subcategory of multi-family dwellings, is unconstitutional per se. As already discussed above, the Kravitz plurality specifically rejected the application of such a brittle per se rule where an ordinance excludes a particular type of multi-family dwelling. Appellant acknowledges that the Surrick test rather than a per

se rule applies when a zoning ordinance permits certain forms of multi-family residential use but excludes others. Appellant, however, apparently argues that such is not the situation in the case at bar. Appellant contends that mobile home parks constitute a separate and distinct usage and as such are not a subcategory of multi-family dwellings. Therefore, their exclusion would not trigger Surrick with its focus on exclusion of population growth but rather would be governed by Exton Quarries.

Appellant's argument must be rejected first because mobile home parks constitute an integrated community and as such must be considered a form of multi-family dwelling. Second, since mobile home parks are in any case a form of residential use, Fernley v. Board of Supervisors of Schuylkill Township, 76 Pa. Commw. 409, 464 A.2d 587 (1983) precludes the conclusion that Exton Quarries applies.

Mobile home parks do not merely consist of a series of self-sufficient mobile homes. Rather, each unit is dependent upon the centralized management of the owner-operator for their utilities and other services. Water, oil, electricity, telephone and sewer facilities are supplied to the individual units by the owner of the mobile home park. The individual mobile home owner rents a pad on a monthly basis. Each pad has the appropriate connections through which the mobile home owner can gain access to this group system. In some mobile home parks there are associations for the maintenance and upkeep of the property for which each owner pays a fee. In others the owner-operator provides these services which include having snow plowed, grass cut and other general maintenance and repairs performed. Part of the maintenance fee may also include use of a pool if there is one.

Appellant's argument that the Exton Quarries' rule applies rather than Kravitz must also be rejected in light of the Commonwealth Court's recent holding in Fernley, supra, a post-Kravitz decision. In Fernley the court, faced with the issue of the validity of an ordinance which flatly prohibited all multi-family dwellings, rejected the application of the rule in Exton Quarries in cases involving exclusion of residential uses. After pointing out that the Exton Quarries line of cases "have not followed the fair share analysis dependent upon the population growth prerequisite" the court went on to distinguish that line on the grounds that they antedated Surrick and more importantly on the grounds that "a population growth prerequisite, clearly relevant to the exclusion of residential population, is not similarly germane to the exclusion of nonresidential uses not directly affecting population." 76 Pa. Commw. 409, 464 A.2d at 589.

For the aforementioned reasons, we conclude that the principles set forth in Exton Quarries do not govern the instant case and that Kravitz controls. Although Kravitz is a plurality opinion and there was no majority on the rationale, the decision that the exclusion of townhouses was not unconstitutional did command a majority.[2] We therefore feel constrained to follow it. Under our reading of Kravitz and its companion case Appeal of Elocin, Inc., 501 Pa. 348, 461 A.2d 771 (1983), we feel compelled to conclude that the Solebury Township Zoning Ordinance is not unconstitutionally exclu-

2. Mr. Justice Zappala wrote the plurality opinion in which Justice Roberts and Justice McDermott joined. Justice Flaherty concurred in the result. Justice Nix filed a dissenting opinion in which Justice Larsen joined. Justice Hutchinson filed a separate dissenting opinion.

sionary, although it excludes a legitimate and unique housing type.

Kravitz directs us to begin our analysis by determining whether the community in question is a logical area for growth and development within the meaning of Surrick. In other words, we are to determine whether a particular community is in the path of urban-suburban growth. Kravitz, 501 Pa. at 209, 460 A.2d at 1080; Surrick, 476 Pa. at 192, 382 A.2d at 110. In light of the plurality opinion in Kravitz, we feel compelled to conclude that Solebury Township is not in the path of urban-suburban growth.

In Kravitz, the Supreme Court plurality noted that:

"Wrightstown Township is approximately 37 miles from Philadelphia and 18 miles form Trenton, and that no major highways link the Township with these communities. No major employers are presently located within the Township, nor in any of the immediatley surrounding townships. The major employment centers other than Philadelphia and Trenton are Doylestown, approximately 10 miles to the northwest; Lower Bucks County, approximately 12 miles to the south; and Montgomery County, about 15 miles to the southwest. Wrightstown is not serviced by any form of mass transportation, rural bus, or commuter transit to any of these employment centers." 501 Pa. at 213, 460 A.2d at 1082. The plurality also noted that the Bucks County Planning Commission projected the Township's population to increase from the 1970 population base of 2,266 to 2,600 in 1975; 3,004 in 1980; 3,820 in 1985; and 4,900 in 1990. The court concluded that:

". . . Based on this and other evidence, the Board properly determined that the Township is not a logical place for rapid growth and development, al-

though some population expansion may be anticipated."

If Wrightstown, a contiguous township to Solebury Township, is not in the path of urban-suburban growth a fortiori neither is Solebury which is more geographically isolated from the major employment centers of Philadelphia, Doylestown, Lower Bucks County and Montgomery County than Wrightstown and as such has even less external pressure for development. The Bucks County Planning Commission in its memorandum dated February 20, 1980, set forth the high and low range population projections for Solebury for the period 1970 through 1985. The high range projection of the increase in the total number of dwelling units is 784 with the low range projection being 541.

In light of the Kravitz analysis set forth above and our own scrutiny of the facts of this case, we must conclude that Solebury Township is not a logical place for rapid growth and development although here too, as in Wrightstown, some population expansion is anticipated. The question which confronts this court is whether having drawn such a conclusion we are bound to declare the ordinance valid without further inquiry.

The Commonwealth Court recently considered its first post-Kravitz exclusionary zoning case and, interpreting Surrick, supra, held that the question of whether a community is in the path of urban-suburban development is a question that must be answered in the affirmative before a zoning ordinance may be found to be exclusionary for its failure to provide for multi-family dwellings. Fernley v. Board of Supervisors of Schuylkill Township, supra (decided August 16, 1983).

". . . The remainder of the Surrick opinion leaves no doubt that an affirmative answer to the initial in-

quiry is a prerequisite to a conclusion that the zoning ordinance is exclusionary. We are to proceed to consideration of the present level of development only after we have 'determined that a particular community is in the path of urban-suburban growth . . . ,' . . . ." 76 Pa. Commw. 414-415, 464 A.2d at 589 (Quoting Surrick supra). As a result of this interpretation of Surrick and because the Court affirmed a finding that Schuylkill Township was not in the path of urban-suburban growth, the court affirmed an outright prohibition of apartment development and held that the ordinance did not constitute an invalid exclusion without further analysis. The court did, however, take the position that Kravitz and Elocin were not controlling in that case and further indicated that the effect of those two cases was to "becloud" the Commonwealth Court's line of exclusionary cases. 76 Pa. Commw. 416, 464 A.2d at 589-590.

As we have already pointed out, we feel that Kravitz and Elocin are controlling in the case at bar. We therefore must look to those cases to determine whether all inquiry must cease once it is determined that the community in question is not in the path of urban-suburban growth. As the Commonwealth Court indicated in Fernley, supra, it is "our duty to apply the principles articulated by the highest court of our state . . . ." 76 Pa. Commw. 416, 464 A.2d at 590.

We appreciate the Commonwealth Court's difficulty in applying Kravitz. Since any reading of Kravitz and Elocin is likely to reflect some of the confusion which candidly one must confess arises as a result of those opinions, we hope it is understandable that the Commonwealth Court's reading of Kravitz and Elocin may differ from our own. For example, the Commonwealth Court notes that in

Kravitz there was no clear finding that Wrightstown Township was not in the path of population growth. Id. We have already pointed out the extent to which the plurality had in fact approved the finding that Wrightstown Township was not in the path of urban-suburban growth.

We do not believe that the analysis utilized by the plurality in Kravitz supports the proposition that a community which is situated such that it is not subject to the flow of population from our urban centers can completely zone out certain groups. Certainly no community, suburban or rural, whether or not in the path of development, may totally exclude moderate and low income persons by means of excluding certain types of multi-family dwellings. The plurality in Elocin, comprised of the same Justices who formed the Kravtiz plurality, [3] pointed out that "In Surrick . . . we held that the land use regulations of a municipality must meet the legitimate needs of all categories of people who desire to live within its boundaries." 501 Pa. at 352, 461 A.2d at 773. Clearly if all judicial scrutiny were required to cease upon a finding that a municipality is not in the path of urban-suburban growth, there would be no means by which the courts of this Commonwealth could uniformly enforce that requirement to meet those legitimate needs.

The Kravitz plurality itself did not terminate its analysis once it determined that "the Board properly determined that the Township is not a logical place for rapid growth and development although some population expansion may be anticipated." 501 Pa. at 214, 460 A.2d at 1082 (Emphasis added). As we

---

3. As in Kravitz , the plurality opinion was written by Justice Zappala who was joined by Chief Justice Roberts and Justice McDermott.

explained before, this conclusion followed an analysis of the township's proximity to and transportation links with major employment centers and the township's projected population growth figures. Thus the conclusion that Wrightstown Township is not a logical place for rapid growth and development was a determination that the township was not in the path of urban-suburban development. However, notwithstanding that finding the court continued its analysis. Addressing Kravitz's argument the township only made token provision for multi-family dwellings in general, the plurality analyzed the projected population figures and housing needs for the township and region and concluded that the ordinance more than provided for anticipated population growth. The plurality also discussed the adequacy of the municipal services provided by the township. 501 Pa. at 214-215, 460 A.2d at 1083.

As did the plurality in Kravitz, we find it necessary therefore to examine further the facts of this case despite our conclusion that Solebury Township is not in the path of urban-suburban growth. In so doing, we will follow the example of Kravitz and scrutinize all the circumstances of this case in order to determine whether the township has conscientiously sought to address its population growth needs and, because the township has chosen to exclude mobile home parks, we particularly explore whether the township has met its obligation to provide for moderate and low income groups as it has addressed its growth needs.

In support of the position that the zoning ordinance is valid, the board argues that the ordinance provides for all income levels in an area with enough land to accommodate projected population growth. The area referred to by the board is RDD-Residential Development District, the only district

which provides for multi-family dwellings. The ordinance permits duplexes, multiplexes, atrium houses, townhouses, garden apartments and mid-rise apartments in that district. The map indicates that there is only one such district in the township which comprises a relatively small area of the township.

The board relies primarily on the Bucks County Planning Commission memorandum dated February 20, 1980 and to some extent on a portion of the testimony of John Welsh, the applicant's expert, to support its conclusion that the township has met its obligation to accommodate projected population growth for persons of all income levels.

In its memorandum the Bucks County Planning Commission set forth the high and low range population growth projections for Solebury Township through 1985. These figures were broken down into four income categories as follows:

### 1970-1985 HOUSING UNIT ADDITIONS

|  | LOW | MODERATE | MIDDLE | UPPER | TOTAL |
|---|---|---|---|---|---|
| Low Range | 61 | 76 | 229 | 175 | 541 |
| High Range | 110 | 136 | 294 | 244 | 784 |

The commission calculated that the Residential Development District has the capacity to accommodate approximately 1,250 dwelling units. Thus the commission concluded that "in addition to providing an opportunity to provide housing for all income levels in terms of housing types permitted and density, the RD District is large enough to accommodate the township's projected population."

We believe that as evidence of population growth and the sufficiency of low cost housing within Solebury Township, the commission's report suffers from certain defects. The population projections contained in the memorandum are not particularly well suited to serve as the basis for the conclusion

that Solebury Township will meet its long term obligation to provide for future population growth. These projections cover the period from 1970 to 1985 which means that although they cover the time of the ordinance and are therefore of obvious significance, they do not cover a period of time also relevant to the resolution of the issue at hand. It is also the future with which we are concerned and these projections only extend over the next two years.

One might wonder, as did Justice Hutchinson in his thoughtful dissent in Kravitz, whether "The simple fact that someone is anxious to build townhouses [or in the instant case mobile home parks] in this Township is a strong indication that people desire them." 501 Pa. at 222, 460 A.2d at 1087 (Dissenting opinion). However, one would have to plead an extraordinary innocence of zoning history if one were to assume that an application for mobile home parks was always or in every instance based upon a serious or sincere desire in, let along expectation of, their actual construction. The commission did not discuss the data on which it based its conclusion that the ordinance accommodates persons of low or moderate income. It seems to have assumed that the types of housing provided for in the ordinance would accommodate persons in those income groups. Despite the difficulties we might have in relying on this memorandum as evidence of the township's accommodation of future population growth of all income levels, we cannot say that the board abused its discretion in so relying. The Bucks County Planning Commission memorandum specifically pointed out that all income groups would be provided for.

The board cites Mr. Welsh's testimony that persons buying townhouses and condominiums, which

are permitted uses, are the same as those buying mobile homes in mobile home parks, as additional support for its conclusion that no income groups are being excluded by the township's failure to provide mobile home parks. Mr. Welsh testified that those persons interested in purchasing mobile homes in mobile home parks, young couples and older couples, also look to purchase townhouses and condominiums. It does not necessarily follow, however, that they would also be of the same income level. Mr. Welsh's statement on that point indicates that the option chosen by the members of these two groups would depend on their individual income and savings, the least economically advanted gravitating toward mobile home parks. However, Mr. Welsh's testimony as to the relative costs of these respective housing types does not entirely support that conclusion. Mr. Welsh testified that by purchasing a mobile home, as opposed to the higher priced townhouses or condominiums, the buyer avoids a one percent transfer tax as well as settlement costs and thus has to pay less money "up front." However, he also testified that interest rates on mobile homes are the same as those for other multi-family dwellings; that mobile homes are subject to a six percent sales tax; that the mobile home owner must pay a monthly rental fee for the use of a pad in a mobile home park, and that the length of the financing for mobile homes is much shorter than for conventional dwellings.

In summary, we hold that by virtue of the Bucks County Planning Commission memorandum and portions of the testimony of Mr. Welsh, the board had substantial evidence upon which it could base its conclusion that the ordinance accommodates projected population growth for persons of all income levels. Therefore, we will not disturb the

board's findings despite our own reservations. In so holding, we are again guided by the plurality opinion in Kravitz.

In Kravitz the language of the zoning ordinance at issue appeared to exclude townhouses.[4] Based on testimony to the effect that the drafters of the ordinance intended to permit townhouse development, the Supreme Court plurality concluded that the Board had substantial evidence on which to base its finding that the ordinance did not exclude townhouses.

"[W]e cannot agree with the Commonwealth Court that the interpretation given by the Board to its own Ordinance is unreasonable, especially in view of the testimony of the president of the planning firm responsible for drafting the Ordinance. Whether this Court, or the Commonwealth Court, would interpret the Ordinance differently, the Board had substantial evidence on which to base its finding that the Ordinance did not exclude townhouses. The Commonwealth Court exceeded

---

4. In Justice Hutchinson's dissent the ordinance was outlined as follows: "[T]he only zone in this township in which townhouses are arguably allowed is the R-4 Zone. With respect to permitted use in the R-4 Zone, the language of Section 204.1(A) of this ordinance is succinct and explicit: 'In R-4 districts land, buildings, or premises shall be used by right for only one or more of the following: Multi-family dwelling constituting a single operating or propriety (sic) unit.' The definition of a multi-family dwelling in Section 102.3 is equally clear. 'A building designed for or occupied by three or more families.' A 'townhouse' is defined in Section 102.3 as 'a building designed for and occupied exclusively as a residence for one family and having a party wall . . . in common with an adjacent building.' Thus, the housing category 'townhouse' and the housing category 'multi-family dwelling" are mutually exclusive.'" 501 Pa. at 217, 460 A.2d at 1084 (dissenting opinion).

the proper scope of its review in giving the Ordinance its own interpretation." 501 Pa. at 212-213, 460 A.2d at 1082.

Applying a standard as permissive as that exemplified in Kravitz, we find ourselves under all the circumstances compelled to conclude that the board's reliance on the Bucks County Planning Commission memorandum was not unreasonable and thus did not amount to an abuse of discretion or error of law. To hold otherwise would be to exceed the proper scope of review.

While we so hold, we note that it is difficult to gauge the ultimate impact and long term viability of Kravitz. However, for the present Kravitz articulates certain principles and apparently confers upon some municipal governing bodies of this Commonwealth a freer hand in the exercise of zoning power than they previously held. It is incumbent upon these governing bodies therefore to wield what seems to be this broader power in a fashion which demonstrates protection of the rights of all income groups and which does not discriminate against any income group whatsoever. The seriousness with which those obligations are observed will in all probability determine how long the rules of Kravitz will survive.

For the foregoing reasons we enter the following

## ORDER

And now, this December 5, 1983, the appeal is denied and dismissed.