513 A.2d 1120

James A. West, Appellant *v.* Township Supervisors of Adams Township and Stanley Wilhelm and Clara Wilhelm, Wayne Hindman and Pat Hindman, and Thomas Lower and Shirley Lower, Appellees.

Argued March 12, 1986, before President Judge CRUMLISH, JR., and Judges ROGERS, CRAIG, MACPHAIL, BARRY, COLINS and PALLADINO.

*Frederick A. Boehm*, with him, *Patrick J. Clair, Goehring, Rutter & Boehm*, for appellant.

*Frank P. Krizner*, for appellees, Supervisors of Adams Township.

*Richard L. Rosenzweig*, with him, *Gilbert M. Coogler, Rosenzweig & Burton*, for intervenors/appellees, Wilhelm, Hindman and Lower.

OPINION BY JUDGE CRAIG, August 12, 1986:

The key issue in this exclusionary zoning case, now before this court for a second time, is as follows:

> Where a township zoning ordinance has entirely excluded mobilehome parks and all other multi-family residential uses from the municipality, and the trial court has found, on the basis of substantial evidence, that the municipality is not a logical area for development and population growth, is the zoning ordinance's prohibition legally invalid?

The first judicial determination in this case was the decision of Judge BRYDON, of the Court of Common Pleas of Butler County, when, in April of 1983, he declared

the zoning ordinance of Adams Township unconstitutional to the extent that it totally prohibited the use of any land in the municipality for a mobilehome park, soundly relying upon *Environmental Communities v. North Coventry Township*, 49 Pa. Commonwealth Ct. 167, 412 A.2d 650 (1980). In accordance with *Environmental Communities* and other decisions of this court, Judge BRYDON concluded that the ordinance's total exclusion of mobilehome parks caused it to be invalidly exclusionary despite the existence of some mobilehome parks in the township as nonconforming uses and regardless of the township's fair-share defense, in that the township had not met its burden of showing a threat to the health, safety and general welfare of the community as a justification for the total prohibition. *Whitemarsh Township v. Kravitz*, 39 Pa. Commonwealth Ct. 306, 395 A.2d 629 (1978).

That trial court decision was issued pursuant to an appeal of the landowner-developer, James A. West, from an action of the Adams Township Board of Supervisors which had rejected West's curative amendment challenge to the ordinance's validity under sections 609.1 and 1004 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§609.1, 1004.

West's development proposal to the township involved a 150-acre tract located in the township's A-Agricultural Zoning District, on which he proposed a mobilehome park of 228 units at a density of 1-1/2 units per acre. In 1980, the time period governing this case, the township zoning ordinance totally prohibited mobilehome parks by listing among the permitted residential uses only single-family dwellings in the A and R-1 districts and, in addition, two-family dwellings in the A and R-2 districts; by special exception provision applicable in the latter two district classifications, a

landowner could add a "conversion apartment" as a second dwelling unit under specified circumstances. The ordinance required a minimum lot size of 40,000 square feet for each residential use.

When West initially appealed from the township supervisors to the trial court, he submitted a new mobilehome park plan providing for 502 units at a density of 3-1/3 units per acre.

Pursuant to the township's appeal of that first decision of the trial court, this court, in *Township Supervisors of Adams Township v. James A. West (West I)*, 79 Pa. Commonwealth Ct. 254, 469 A.2d 701 (1983), vacated the trial court order and remanded the case so that, pursuant to further hearing, the trial court could reconsider the validity of the prohibition in the light of *Surrick v. Zoning Hearing Board of Upper Providence Township*, 476 Pa. 182, 382 A.2d 105 (1977), calling for a three-element judicial inquiry, as follows:

> 1. Is the community a logical place for development and growth?
>
> 2. Is the community already highly developed?
>
> 3. Is the exclusion total or partial?

Pursuant to our remand, the trial court received additional evidence and found that the Adams Township location, unlike nearby Cranberry Township, is not in the logical path for growth and development. In accordance with that finding, which is supported by substantial evidence of record, the trial judge decided against West, who filed this present appeal.

In *West I*, this court succinctly stated our precedential basis for introducing the *Surrick* analysis as follows:

> Recently, however, in Fernley v. Board of Supervisors of Schuylkill Township, 76 Pa. Commonwealth Ct. 409, 464 A.2d 587 (1983), we held that residential use cases involving even a total

prohibition must be subjected to the analysis called for in Surrick. . . .

79 Pa. Commonwealth Ct. at 260, 469 A.2d at 704.

This court's decision in *Fernley* had noted that the actual judgments reached by the Pennsylvania Supreme Court in *Appeal of M.A. Kravitz Co. Inc.,* 501 Pa. 200, 460 A.2d 1075 (1983), and *Appeal of Elocin, Inc.,* 501 Pa. 348, 461 A.2d 771 (1983), had beclouded the previous principle governing total exclusions by zoning ordinances, under which principle this court had consistently held that a total prohibition of a legitimate use overcame the presumption of ordinance constitutionality and shifted to the municipality the burden of proving the reasonableness of the exclusion. Our attempt to discern the effect of the plurality opinions, concurrences and dissents in *Kravitz* and *Elocin* concluded by stating:

> [T]he differences among the Justices would not appear to have indicated a departure from the majority consensus that the fair share population-growth analysis is applicable even to a prohibition which is total.

*Fernley v. Board of Supervisors of Schuylkill Township,* 76 Pa. Commonwealth Ct. 409, 464 A.2d 587, 589-90 (1983), *rev'd Fernley v. Board of Supervisors of Schuylkill Township,* 509 Pa. 413, 502 A.2d 585 (1985).

As indicated by the foregoing citation, the Supreme Court subsequently corrected our view as to its "majority consensus" by reversing our *Fernley* decision and holding, in a majority opinion on behalf of four Justices, as follows:

> We are now confronted with the question of whether a fair share analysis must be employed to assess the exclusionary impact of zoning regulations which totally prohibit a basic type of housing. We hold that the fair share analysis is inapplicable to this Schuylkill Township zoning

ordinance which absolutely prohibits apartment buildings.

. . . .

Considerations underpinning the fair share principle are irrelevant when the challenged zoning regulation totally excludes a basic form of housing such as apartments.

. . . .

. . . Our court has determined that the Township's zoning ordinance prohibiting the construction of apartments on appellants' land is unconstitutional without respect to the considerations embodied in a fair share analysis.

. . . Such an analysis is irrelevant on this record where the local government has made no provision for multi-family housing. . . . [F]air share principles are not to be considered in determining the constitutionality of a zoning ordinance which totally excludes multi-family housing.

509 Pa. at 417-425, 502 A.2d at 587-91.

In this present case, Adams Township has, during the pertinent time period, totally excluded all multi-family uses—mobilehome parks as well as all other multi-family categories—by limiting the permitted uses only to one-family dwellings and two-family dwellings. Accordingly, this court's order of December 29, 1983, remanding this case to the Court of Common Pleas of Butler County, to reconsider the Adams Township ordinance in the light of the *Surrick* analysis, was not in accord with the principles now confirmed to us by the Pennsylvania Supreme Court's opinion in *Fernley*. Although that majority opinion did not discuss the meaning or effect of either the judgment votes of the Supreme Court members or their various opinions in *Kravitz* and *Elocin*, it has eliminated any suggestion,

which might be derived from the *Kravitz* or *Elocin* results or otherwise, that a fair-share population-growth analysis is applicable to a total prohibition of a legitimate use.

Accordingly, Trial Judge BRYDON was correct when he stated, in his original June 15, 1983 opinion in *West I,* as follows:

> West, having established the total prohibition of mobile home parks, shifted the burden to the township to show the prohibition constitutes a threat to the general health and welfare of the community.

As reiterated by the Supreme Court's majority opinion in *Fernley,* in accordance with the longstanding line of decisions in that court and in this court:

> Where the challenger proves a total prohibition of a legitimate use, the burden shifts to the municipality to establish that the prohibition promotes public health, safety, morals and general welfare. . . .
>
> Moreover, the constitutionality of a zoning ordinance which totally excludes a legitimate use is regarded with circumspection and, therefore, such ordinance must bear a more substantial relationship to a stated public purpose than a regulation which merely confines that use to a certain area within the municipality.

509 Pa. at 418, 502 A.2d at 587.

With respect to Adams Township's record response to that burden, Judge BRYDON's original opinion found:

> The only reasonable objection which the court found in the record concerned the condition of roads which would service the proposed park. The court accordingly ordered the described development approved as to its elements and referred the matter to the Township for due concern with ordinances involving the roads.

Judge BRYDON was entirely correct in that respect. Obviously the condition of the roads and access facilities in the immediate vicinity, although relevant to the adaptation of the West development to the particular site, did not in any way provide a justification for the total exclusion of mobilehome parks from the entire municipality.

After the remand pursuant to our decision in *West I*, the trial judge, in his Memorandum Opinion and Order of October 17, 1984, found:

> Further testimony revealed the the [sic] West plan would be located on Legislative Route 10011. A traffic engineer, presented as an expert witness by the Intervening defendants, testified that the road does not have the capacity to handle the additional traffic generated by the West plan. Legislative Route 10011 has not been rebuilt since 1939 and Penn Dot does not have plans to improve or rebuild it in the future. The expert's opinion was that the road was presently unsafe for the traffic it presently bears but because of the extremely low volume of traffic, the hazard is small. However the increase of 228 units was estimated to create a 2000 vehicle trip per day increase that would result in a significant safety hazard.

From the foregoing, the trial judge drew no conclusion concerning justification for the total exclusion of mobilehome parks. Instead, he rationally perceived the status of the roads as germane to the *Surrick* analysis issues, stating:

> The traffic hazard, then, is extrinsic to the Township's duties but intrinsic to the logic of an ordinance that reflects the character of the Township's low density development and the capacity of the road system servicing the Township and in particular, the proposed West site. The first

element of the Surrick analysis is not herein met. This site is not in the logical path for development.

Now, in the light of the analysis restated by the Supreme Court's majority opinion in *Fernley,* the objectors, as intervenors-appellees, place stress upon certain additional evidence concerning the adequacy of road access, contending that we must consider that matter as a possible justification for the total exclusion.

However, the additional expert testimony concerning traffic problems is not pertinent to any justification for the total exclusion of mobilehome parks and other multi-family uses from the entire municipality. The fact that multi-family development might tax the circulation facilities in one neighborhood cannot logically justify the rejection of multi-family use municipality-wide.

Neither the trial judge's findings nor any material in the entire record, beginning with *West I,* provide the required justification for the total exclusion, and this court therefore must conclude, as the trial judge did from the outset, that the township has been unable to sustain the burden of justifying that exclusion.

In a supplemental brief filed after the Supreme Court handed down its *Fernley* decision, the objectors, as intervenors-appellees, have sought to disassociate the Supreme Court's *Fernley* view from this case by pointing out that the *Fernley* development application antedated the Act of October 5, 1978, P.L. 1067, §6, which added MPC §1011(2), 53 P.S. §11011(2), relating to the relief which a court is to afford upon declaring an ordinance provision invalid, while the 1980 West application followed the effective date of that amendment. The objectors place reliance on a passage in the Supreme Court's *Fernley* opinion which reads:

Section 1011(2) would now require a court to employ a fair share analysis in determining the

relief to be awarded those who, like the appellants, successfully challenge a zoning ordinance on constitutional grounds. Such an analysis is irrelevant on this record where the local government has made no provision for multi-family housing. Moreover, if applied to appellants, this portion of the statute could affect, and conceivably extinguish, their pre-existing substantive right to proceed with their proposed development subject to the restrictions discussed *supra* at 589-590. Such a retroactive application of Section 1011(2) fair share provisions would be inappropriate in fashioning the judicial relief to which the appellants are entitled. To do so would offend due process. The court's consideration of the other provisions of the amended statute, or its remand to the local zoning authority for its consideration of them, does not violate due process rights since they are not, in and of themselves, inconsistent with our holding today that fair share principles are not to be considered in determining the constitutionality of a zoning ordinance which totally excludes multi-family housing. However, in considering those other factors, the court, or the Board of Supervisors, if the case is subsequently remanded to it, must place the burden of showing their materiality, or the development's incompatibility with pre-existing codes, on the Board.

509 Pa. at 424-25, 502 A.2d at 591.

To the extent that the objectors contend that MPC §1011(2) mandates the application of a fair share analysis to judicial determination of ordinance validity in post-1978 cases, the contention must fail because the statutory provision in question expressly governs the fashioning of relief after a judicial determination of invalidity,

rather than the principles which govern in reaching that determination. The statutory provision states that a court may order described development approved in whole or in part "[i]f the court . . . finds that an ordinance . . . unlawfully prevents or restricts a development. . . ." Accordingly, the Supreme Court discussion, as quoted above, regards the section as pertinent to "determining the relief to be awarded to those who . . . successfully challenge a zoning ordinance on constitutional grounds."

With respect to relief, the trial judge's order of August 27, 1982 and, pursuant to reconsideration, his order of April 7, 1983 were in accordance with *Whitemarsh Township v. Kravitz, Ellick v. Board of Supervisors*, 17 Pa. Commonwealth Ct. 404, 333 A.2d 246 (1975) and section 1011(2) of the MPC, 53 P.S. §11011.[1] For example, in paragraphs five and six of the order of August 27, 1982, the trial judge stated:

5. The matter is remanded to the Adams Township Board of Supervisors for further consideration, and the Appellant be permitted to develop a mobile home park in accordance with the plan submitted before the Adams Township Board of Supervisors on June 2, 1980.

6. The Appellant may proceed with the above proposed development, subject to all other reasonable zoning and other applicable

[1] To the extent that the objectors rely on MPC §1011(2) with respect to the relief which Judge BRYDON fashioned in his initial orders, this court's response is that those orders evidence the trial judge's astute attention to such relief guidelines. Among other things, the statute states that the relief afforded may consider "the general location of the site with regard to major roads" and "the impact of the proposal on . . . the transportation network. . . ." Notably, the trial judge's approval of the described development requires that the concerns for the conditions of the roads be satisfied in the development's implementation.

laws and regulations and so as to satisfy the concerns for the conditions of the roads voiced by the Adams Township Board of Supervisors. The Common Pleas Court of Butler County will retain jurisdiction of this case during the pendency of this matter.

In the reconsideration order of April 7, 1983, the trial judge did not repeat paragraph five, quoted above, but did repeat the first sentence of paragraph six. Thus it is clear that, in his final order of April of 1983, the trial judge, in granting relief as to "the above proposed development" was referring to "the plan submitted before the Adams Township Board of Supervisors on June 2, 1980." That was the 228-unit plan.

The developer here strenuously argues that he should be entitled to proceed with the 502-unit proposal which he did not introduce until his appeal to court from the curative amendment determination of the township governing body, contending that we should now eliminate the lower-density original proposal as one merely designed to induce voluntary approval by the township fathers without further litigation. However, the procedures of the MPC, which govern here, make it clear that the official development request—and therefore the one which should remain effective with respect to ultimate relief—is the request submitted with the curative amendment application. MPC §1004(2), 53 P.S. §11004(2), plainly states that curative amendment submissions "shall be governed" by the following:

> (c) The request shall be accompanied by plans and other materials describing the use or development proposed by the landowner in lieu of use or development permitted by the challenged ordinance or map. . . .

Thus, the entire curative amendment proceeding is "governed" by the development description which accompanies the curative amendment request submitted to the governing body. There is no reason to depart from this court's response in *West I* to the developer's claim that specific relief should embrace the higher-density plan. This court's opinion, by Judge BARRY, stated:

> Nonetheless, the trial court must, if it finds on remand that the ordinance cannot pass constitutional muster, review *the plan previously submitted to the township supervisors* keeping in mind the mandate of Ellick and section 1011(2) of the Municipalities Planning Code . . . and approve the same, subject to all reasonably adaptable provisions of other enactments of the township.

79 Pa. Commonwealth Ct. at 262, 469 A.2d at 705 (emphasis added).

Accordingly, the present state of the law and this record require that this court vacate the trial court order of October 17, 1984, here on appeal, not by reason of any error attributable to the trial judge, but solely because of the error of this court's conclusion in *Fernley* and the consequent remand order in *West I* following our *Fernley* decision. Pursuant to fresh guidance from the Supreme Court, the essential correctness of the trial judge's original order is apparent, and our judgment here can do no better than reiterate that original order of the trial judge dated August 27, 1982, with the exception of its paragraph four which would have mandated the adoption of the curative amendment, contrary to *Ellick,* 17 Pa. Commonwealth Ct. at 415, 333 A.2d at 246. In all other major respects, that order of Judge BRYDON is reinstituted in the order which follows.

## ORDER

Now, August 12, 1986, it is ordered as follows:

1. The order of the Court of Common Pleas of Butler County dated October 17, 1984 is vacated;

2. The Adams Township Zoning Ordinance is declared invalid to the extent that it totally prohibited the use of any land in the municipality for a mobilehome park;

3. The appellant shall be permitted to develop a mobilehome park in accordance with the plan submitted before the Adams Township Board of Supervisors on June 2, 1980;

4. The appellant may proceed with the above proposed development, subject to all other reasonable zoning and other applicable laws and regulations and so as to satisfy the concerns for the conditions of the roads voiced by the Adams Township Board of Supervisors; and

5. The Common Pleas Court of Butler County shall retain jurisdiction of this case during the pendency of this matter.