502 A.2d 585

Robert C. FERNLEY, Lois M. McNeil and Joan M. McCracken, Appellants,

v.

The BOARD OF SUPERVISORS OF SCHUYLKILL TOWNSHIP, Appellee.

Supreme Court of Pennsylvania.

Argued Oct. 22, 1984.

Decided Dec. 27, 1985.

Reargument Denied July 31, 1986.

414

Jeanne Ward Ryan, Daniel Mungall, Jr., Philadelphia, for appellants.

Lois Reznick, Philadelphia, for appellee.

Before NIX, C.J., and LARSEN, FLAHERTY, McDER-MOTT, HUTCHINSON, ZAPPALA, and PAPADAKOS, JJ.

## OPINION OF THE COURT

HUTCHINSON, Justice.

Appellants, owners of 245 acres of undeveloped land in Schuylkill Township in Chester County, appeal a Commonwealth Court, 76 Pa.Cmwlth. 409, 464 A.2d 587 order affirming the Court of Common Pleas of Chester County. The Court of Common Pleas, in turn, had affirmed the decision of the Board of Supervisors of Schuylkill Township denying appellants' application for a curative amendment[1] which challenged the total prohibition of multi-family dwellings contained in the Township's zoning ordinance[2] on exclusionary grounds and sought the establishment of a new residential district in which appellants could construct garden apartments, townhouses and quadraplexes. We now reverse Commonwealth Court and hold that Schuylkill Township's zoning ordinance is impermissibly exclusionary because it totally prohibits the construction of multi-family dwellings.

█ The zoning ordinance in effect at the time appellants filed for a curative amendment established five residential districts, the least restrictive of which was designated R4–Residential and permitted single family dwellings on lots having a minimum area of 15,000 square feet. Zoning Ordinance of 1955, *as amended,* § 676(1). Appellants' property was classified under the zoning ordinance as A–Agricultural. Section 302(1) of the ordinance provided for a minimum lot size of five acres in that district. Two-family detached dwellings were permitted but only on lots of ten acres or more. *Id.* at § 301(2). Moreover, dwellings exist-

1. The appellants' application for a curative amendment was filed pursuant to Section 609.1 of the Pennsylvania Municipalities Planning Code (M.P.C.), Act of June 1, 1972, P.L. 333, No. 93, 609.1, 53 P.S. § 10609.1.

2. Schuylkill Township, Chester County, Pennsylvania Zoning Ordinance of 1955, *as amended.*

ing at the time the ordinance was adopted in 1955 could be converted to accommodate no more than three families. *Id.* at § 301(1). The zoning ordinance otherwise prohibited multi-family homes.[3]

On this appeal, appellants challenge Commonwealth Court's conclusion that the zoning ordinance's absolute prohibition of multi-family housing is not unconstitutionally exclusionary because Schuylkill Township is not a logical area for growth and development, and, therefore, no one has been excluded.[4] In reaching its conclusion, Commonwealth Court employed the "fair share" analysis first announced in *Surrick v. Zoning Hearing Board*, 476 Pa. 182, 382 A.2d 105 (1977), which, until its decision, had been applied only in cases involving zoning regulations which partially, not totally, ban a particular type of housing stock. We are now confronted with the question of whether a fair share analysis must be employed to assess the exclusionary impact of zoning regulations which totally prohibit a basic type of housing. We hold that the fair share analysis is

3. *See* Section 1401. *Attached, Semi-detached and Multiple Dwellings.* No attached or semi-detached building shall be used in whole or in part as a dwelling and no multiple dwelling shall be constructed in any district of the Township other than two-family dwellings as permitted in Sections 301, 401, 501 and 601 hereof.

Since the commencement of this litigation, the Township's zoning ordinance has been amended. That amendment permits residential cluster development on the land owned by appellants. The average lot size in such a development shall be not less than 40,000 square feet (.918 acres). Apartments, townhouses, semi-detached, and quadraplex dwellings are now permitted in the township albeit not on appellants' land. Schuylkill Township Zoning Ordinance of 1955, *as amended,* October 1, 1975.

The record establishes that the proposed amendment ultimately adopted in October, 1975, had not been published by the township at the time appellants filed their curative amendment. Thus, the pending-ordinance doctrine enunciated in *Casey v. Zoning Hearing Board of Warwick Township*, 459 Pa. 219, 328 A.2d 464 (1974), prevents our consideration of the impact of that amendment upon the challenged ordinance.

4. One of the Board of Supervisors' key findings of fact is that Schuylkill Township is not in the path of urban-suburban development. Board of Supervisors' Findings of Fact ("F.F.") Nos. 96, 105, 215. This finding was affirmed on appeal by the Court of Common Pleas.

inapplicable to this Schuylkill Township zoning ordinance which absolutely prohibits apartment buildings.

A zoning ordinance is presumed constitutional and anyone challenging it bears a heavy burden of proving its invalidity. *Miller & Son Paving, Inc. v. Wrightstown Township,* 499 Pa. 80, 89, 451 A.2d 1002, 1006 (1982); *Schubach v. Silver,* 461 Pa. 366, 380, 336 A.2d 328, 335 (1975). Where the challenger proves a total prohibition of a legitimate use, the burden shifts to the municipality to establish that the prohibition promotes public health, safety, morals and general welfare. *Beaver Gasoline Co. v. Zoning Hearing Board,* 445 Pa. 571, 576, 285 A.2d 501, 503 (1971); *Ellick v. Board of Supervisors,* 17 Pa. Commonwealth 404, 410, 333 A.2d 239, 243–44 (1975). Moreover, the constitutionality of a zoning ordinance which totally excludes a legitimate use is regarded with circumspection and, therefore, such ordinance must bear a more substantial relationship to a stated public purpose than a regulation which merely confines that use to a certain area within the municipality. *Re: Appeal of Elocin, Inc.,* 501 Pa. 348, 351–52, 461 A.2d 771, 772–73 (1983); *Appeal of Girsh,* 437 Pa. 237, 242–43, 263 A.2d 395, 397–98 (1970). *See Beaver Gasoline Co. v. Zoning Hearing Board,* 445 Pa. at 574, 285 A.2d at 503 (total ban on gasoline service stations); *Exton Quarries, Inc. v. Zoning Board of Adjustment,* 425 Pa. 43, 59, 228 A.2d 169, 179 (1967) (total ban on quarries).

 The "fair share" test,[5] enunciated in *Surrick, supra,* was judicially developed as a means of analyzing zoning ordinances which effect a partial ban that amounts to a *de facto* exclusion of a particular use, as distinguished from those ordinances which provide for a total or *de jure* exclusion. The *de facto* exclusionary doctrine "was intended to foster regional growth by requiring communities

5. The "fair share" analysis requires the reviewing court to determine whether "the zoning formulas fashioned by [local zoning hearing boards and governing bodies] reflect a balanced and weighted consideration of the many factors which bear upon local and regional housing needs and development." *Surrick v. Zoning Hearing Board,* 476 Pa. at 191, 382 A.2d at 109–10.

located on the fringes of the metropolitan areas to absorb the 'increased responsibility' and 'economic burdens' which time and natural growth invariably bring." *Hammermill Paper Co. v. Greene Township,* 39 Pa. Commonwealth 212, 219, 395 A.2d 618, 621 (1978) (citing *National Land and Investment Co. v. Easttown Township Board of Adjustment,* 419 Pa. 504, 215 A.2d 597 [1965]). *See Surrick,* 476 Pa. at 189, 382 A.2d at 108; *Willistown v. Chesterdale Farms, Inc.,* 462 Pa. 445, 448–49, 341 A.2d 466, 468 (1975). Cases involving *de facto* or partially exclusionary zoning turn on the question of whether the provision for a particular use in the ordinance at issue reasonably accommodates the immediate and projected demand for that use. In these cases certain factors influencing population growth become relevant to the question of whether a zoning ordinance which already allows a particular and basic type of housing stock in designated areas is nevertheless impermissibly exclusionary because the amount of housing of that type permitted under the ordinance is unfairly limited when compared to the immediate and projected demand for it. *See Surrick,* 476 Pa. at 194, 382 A.2d at 111.

■ Considerations underpinning the fair share principle are irrelevant when the challenged zoning regulation totally excludes a basic form of housing such as apartments. It is true that demand for apartments often derives from the pressure of regional population growth. *See, e.g., Appeal of Girsh,* 437 Pa. at 244, 263 A.2d at 398 (township could not be permitted to "choose to only take as many people as can live in single-family housing, in effect freezing population at near present levels"). Similarly, permitting any type of new construction within a municipality will, ordinarily, result in an increase in that community's population.

However, demand for housing is not necessarily correlated to population growth. Regardless of projected growth patterns, there may be many families who presently desire to make their home in Schuylkill Township but who are effectively zoned out of the community because they cannot afford to purchase either a single-family house or a duplex.

Accordingly, Schuylkill Township's contention that its zoning ordinance does not exclude anyone because population projections show little or no growth in the community is untenable.[6] Because the Township has failed to establish that the total exclusion of apartments serves a legitimate public purpose, the zoning ordinance is unconstitutional insofar as it fails to provide for apartments or for other types of multi-family housing.

■ We must next determine the judicial relief to which appellants are entitled. Appellants contend that they are entitled to definitive relief, *i.e.*, automatic and total approval of their development plan. Conversely, the appellee argues that appellants' remedy is limited to the additional development rights provided them under the amendment passed by the Township in 1975 for the purpose of curing any constitutional infirmity created by the total ban on multi-family housing contained in the zoning ordinance as originally enacted.[7]

In *Casey v. Zoning Hearing Board,* 459 Pa. 219, 228, 328 A.2d 464, 468 (1974), we observed that "an applicant, successful in having a zoning ordinance declared unconstitutional, should not be frustrated in his quest for relief by a retributory township." Accordingly, we held that a zoning provision adopted by a municipality which cures the constitutional infirmity but which was not considered or advertised prior to the filing of the challenger's application for review of the zoning ordinance, may not be given effect for purposes of fashioning the appropriate relief to be awarded

---

6. The Board of Supervisors found that population forecasts indicate that the Delaware Valley region, in general, will experience no growth between the years 1978 and 2000, F.F. 91, and that during that same period Schuylkill Township will experience no appreciable population growth. In addition, the Board determined that Schuylkill Township is located outside the Philadelphia Metropolitan Area, F.F. 104, 105, is not serviced by public transportation, F.F. 107, and is geographically isolated by virtue of the North Valley Hills from the Main Line area which is experiencing population growth and which is serviced by Route 30 and a commuter rail line. F.F. 100, 102.

7. *See, supra,* at 417 n. 3.

to the successful challenger. *Id.*, 459 Pa. at 229, 328 A.2d at 469.

In reaching this determination, we reasoned that to hold otherwise:

would effectively grant the municipality a power to prevent any challenger from obtaining meaningful relief after a successful attack on a zoning ordinance. The municipality could penalize the successful challenger by enacting an amendatory ordinance designed to cure the constitutional infirmity, but also designed to zone around the challenger. Faced with such an obstacle to relief, few would undertake the time and expense necessary to have a zoning ordinance declared unconstitutional.

*Id.*, 459 Pa. at 228, 328 A.2d at 468.[8] Accordingly, *Casey* governs the instant litigation and mandates that appellants

8. The precise issue confronting the Court in *Casey* was whether former Section 1009 of the Municipalities Planning Code, Act of July 31, 1968, P.L. 805, § 1009, 53 P.S. § 11009 (since repealed) should be construed as permitting a municipality to cure a constitutional deficiency before judgment had been entered for the landowner-challenger.

Section 1009 provided, in pertinent part, as follows:
(2) Where the appeal involves a challenge to the validity of any ordinance or map the court shall have power to declare the ordinance, map or any provision thereof invalid and, in addition thereto, shall have power to:
(i) Enter judgment in favor of the landowner as provided in section 802, or
(ii) Stay the effect of its judgment for a limited time to give the local governing body an opportunity to modify or amend the ordinance or map in accordance with the opinion of the court.
As already stated, we declined to so interpret Section 1009(2)(ii) because such an interpretation would frustrate the right of a successful challenger to his requested relief. Instead, we determined that the provision was intended to prevent the situation in which the municipality would be left, temporarily, without a valid zoning ordinance. We noted:
Once a zoning ordinance is found to be constitutionally defective, the judgment invalidates the entire ordinance, not merely the zoning on a particular tract of land. By staying the "effect" of its judgment for a limited time, a court can avoid the chaotic situation which would arise if the municipality remained temporarily unzoned. The municipality is given an opportunity to cure the defective ordinance in accordance with the determination of the court without fear of a flood of applications by landowners seeking to take advantage of the invalidity. The original ordinance would

be permitted to develop their property as proposed, subject to certain reasonable restrictions, regardless of how that land is currently zoned.

Nevertheless, we believe that approval of the developer's plan is not automatic but, instead, must be predicated on the suitability of the proposed site and various health and safety considerations. As Commonwealth Court explained in its decision in *Ellick v. Board of Supervisors*, 17 Pa. Commonwealth at 411–12, 333 A.2d at 244–45:

> [I]f a governing body determines that its ordinance is defective, because it totally prohibits the use proposed by the challenging landowner, then the governing body must permit the challenging landowner to develop his land as proposed in the "plans and other materials" submitted with the challenge, provided, of course, that what is submitted is reasonable, and not injurious to the public health, safety, welfare and morals.

The governing body may not totally prohibit the successful challenger's proposed development nor may it subject the proposed development to unreasonable and burdensome restrictions. *See Casey, supra.* The governing body may, however, subject the landowner's submitted plans to reasonable restrictions as may be otherwise properly provided for in its ordinance. To put it another way, the successful challenger will still be required to abide by all of the reasonable building requirements, density restrictions, safety measures, sewage regulations, and water requirements, as well as all other reasonable

remain in effect and subsequent applicants would be on constructive notice of the municipality's intent to amend the defective ordinance and, therefore, would be unable to obtain vested rights based upon the ordinance's invalidity. In effect, a moratorium would be effectuated upon the challenging of the zoning ordinance and the application for building permits until an amended, constitutionally permissible ordinance would be enacted.

*Id.,* 459 Pa. at 229, 328 A.2d at 468–69 (footnote omitted).

Although the particular statutory provision under consideration in *Casey* has since been repealed, the reasoning underpinning our decision in that case remains sound and applies with equal force to the situation presented in the instant litigation. *See* 53 P.S. § 10609.2 and § 11004(2)(a) (representing the Legislature's response to *Casey* ).

zoning, building, subdivision and other regulations generally applicable to the class of use or construction proposed by the landowner. By class of usage here, we mean those classes which are usually found in zoning ordinances such as residential, agricultural, commercial, and industrial.

We are aware that Section 1011(2) of the Municipalities Planning Code [9] enumerates certain factors which courts, on declaring a zoning ordinance invalid, are to consider in fashioning relief.[10] Appellants contend that Section 11011(2), as that provision currently reads, may not be considered by either this Court or the Court of Common Pleas on remand because it was amended in October, 1978 after the start of these proceedings.

**9.** Act of June 1, 1972, P.L. 333, No. 93, § 1011(2), *as amended by* Act of October 5, 1978, P.L. 1067, No. 249, § 6, 53 P.S. § 11011(2).

**10.** Specifically, Section 11011(2) provides that:

(2) If the court, in accordance with the standards provided in subsection (1), finds that an ordinance or map or a decision or order thereunder which has been brought up for review unlawfully prevents or restricts a development or use which has been described by the landowner through plans and other materials submitted to the governing body, agency or officer of the municipality whose action or failure to act is in question on the appeal, it may order the described development or use approved as to all elements or it may order it approved as to some elements and refer other elements to the governing body, agency or officer having jurisdiction thereof for further proceedings, including the adoption of alternative restrictions, in accordance with the court's opinion and order. In issuing its order the court shall consider the following: (i) the locational suitability of the site for the uses proposed including the general location of the site with regard to major roads, sewer facilities, water supplies, schools and other public service facilities or the comprehensive plan and zoning ordinance of the municipality and the county if they exist; (ii) the impact of the proposal on regional housing needs, the transportation network, and the other public services and facilities; (iii) the suitability of the site for the intention of use proposed by the site's soils, slopes, woodland, wetlands, flood plains, aquifers, natural resources and other natural features; (iv) the impact of the proposed use on the site's soils, slopes, woodlands, wetlands, flood plains, natural resources and natural features, the degree to which these are protected or destroyed, the tolerance of the resources to development and any adverse environmental impacts; and (v) the impact of the proposal on the preservation of agriculture and other land uses which are essential to public health and welfare.

In *Krenzelak v. Krenzelak*, 503 Pa. 373, 382, 469 A.2d 987, 991 (1983), we stated that:

Retroactive application of new legislation will offend the due process clause if, balancing the interests of both parties, such application would be unreasonable. *See Chase Securities Corporation v. Donaldson*, 325 U.S. 304, 315–16, 65 S.Ct. 1137, 1142–43, 89 L.Ed. 1628 (1945); *Valladares v. Valladares*, 80 App.Div.2d 244, 250–51, 438 N.Y.S.2d 810, 815 (1981), *aff'd*, 55 N.Y.2d 388, 449 N.Y. S.2d 687, 434 N.E.2d 1054 (1982). *See generally* Hochman, *The Supreme Court and the Constitutionality of Retroactive Legislation*, 73 Harv.L.Rev. 692, 694–95 (1960). Traditionally, retrospective laws which have been deemed reasonable are those which " 'impair no contract and disturb no vested right, but only vary remedies, cure defects in proceedings otherwise fair, and do not vary existing obligations contrary to their situation when entered into and when prosecuted.' " *Smith v. Fenner*, 399 Pa. 633, 641, 161 A.2d 150, 154 (1960) (quoting *Barnesboro Borough v. Speice*, 40 Pa.Superior Ct. 609, 612 [1909] ). *See also Costa v. Lair*, 241 Pa.Superior Ct. 517, 520, 363 A.2d 1313, 1314 (1976).

At the time appellants filed their challenge to the Township's zoning ordinance, they had a substantive right to use their land as they proposed in their development plan absent a valid zoning ordinance prohibiting that proposed use. Our Court has determined that the Township's zoning ordinance prohibiting the construction of apartments on appellants' land is unconstitutional without respect to the considerations embodied in a fair share analysis.

▄▄▄ Section 1011(2) would now require a court to employ a fair share analysis in determining the relief to be awarded those who, like the appellants, successfully challenge a zoning ordinance on constitutional grounds.[11] Such an analysis is irrelevant on this record where the local government has made no provision for multi-family housing. Moreover, if applied to appellants, this portion of the

11. *See,* in particular, Sections 1011(2)(i) and (2)(ii).

statute could affect, and conceivably extinguish, their pre-existing substantive right to proceed with their proposed development subject to the restrictions discussed *supra* at 589–590. Such a retroactive application of Section 1011(2) fair share provisions would be inappropriate in fashioning the judicial relief to which the appellants are entitled. To do so would offend due process. The court's consideration of the other provisions of the amended statute, or its remand to the local zoning authority for its consideration of them, does not violate due process rights since they are not, in and of themselves, inconsistent with our holding today that fair share principles are not be be considered in determining the constitutionality of a zoning ordinance which totally excludes multi-family housing. However, in considering those other factors, the court, or the Board of Supervisors, if the case is subsequently remanded to it, must place the burden of showing their materiality, or the development's incompatibility with pre-existing codes, on the Board.

■ Therefore, we reverse the Commonwealth Court's order and remand the record to the Court of Common Pleas for approval of appellants' proposed development unless the appellee can show that appellants' plan is incompatible with the site or reasonable, pre-existing health and safety codes and regulations relating to lands, structures or their emplacement on lands which the court determines apply to the development plan. *See* Section 1011(2) of the Pennsylvania Municipalities Code, 53 P.S. § 11011(2); *Ellick v. Board of Supervisors*, 17 Pa. Commonwealth at 413–17, 333 A.2d at 246–49.

Reversed and remanded to Common Pleas for proceedings consistent with this opinion.

NIX, C.J., files a concurring opinion.

McDERMOTT, J., files a concurring and dissenting opinion with ZAPPALA, J., joining in the dissenting portion only.

ZAPPALA, J., files a concurring and dissenting opinion with McDERMOTT, J., joining in the dissenting portion only.

NIX, Chief Justice, concurring.

I am satisfied that on this record the challenged zoning ordinance is constitutionally flawed under either the "total exclusion" theory announced in the *Appeal of Girsch*, 437 Pa. 237, 263 A.2d 395 (1970), or the "fair share" principle followed in *Surrick v. Zoning Hearing Board of Township of Upper Providence*, 476 Pa. 182, 382 A.2d 105 (1977).

In these instances where there is a successful challenge to an unconstitutional zoning ordinance it is imperative for this Court to mandate that, subject to reasonable modifications, the township or municipality must ultimately adopt the underlying development plan. Not only does such policy guard against any possible retaliation against the litigant who opposed the zoning board, but it also serves to deter the passage of unconstitutional zoning ordinances. As we reasoned in *Casey v. Zoning Board of Warwick Township*, 459 Pa. 219, 328 A.2d 464 (1974):

Finally, we must determine whether a court has the power to grant an applicant-challenger definitive relief upon rendering a zoning ordinance constitutionally infirm. The appellee seeks a building permit for the erection of multi-family dwellings on his tract of land located in Warwick Township. This Court, pursuant to its disposition of the petition for enforcement of our order in *Girsh Appeal* has implicitly held that courts in this Commonwealth do have such power. "Obviously, if judicial review of local zoning action is to result in anything more than a farce, the courts must be prepared to go beyond mere invalidation and grant definitive relief." To forsake a challenger's reasonable development plans after all the time, effort and capital invested in such a challenge is grossly inequitable.

*Id.*, 459 Pa. at 230, 328 A.2d at 469 (footnotes omitted).

Naturally, it is for the municipality to decide whether apartments are more appropriate in one part of the township than in another, *Appeal of Girsh, supra,* 437 Pa. at 246 n. 6, 263 A.2d at 399 n. 6. As we stated in *Appeal of Girsh, supra,* "Certainly [the township] can protect its attractive character by requiring apartments to be built in accordance with (reasonable) set-back, open space, height, and other light-and-air requirements, but it cannot refuse to make any provision for apartment living." *Id.,* 437 Pa. at 245, 263 A.2d at 399 (footnote omitted). Thus, it is appropriate that the developer's plan in the instant case be approved subject to "certain reasonable restrictions."

Accordingly, I would reverse the Commonwealth Court's order and remand the case to the Court of Common Pleas to consider any adjustments which may be required to make the proposed plan compatible with the overall zoning plan of the Township.

McDERMOTT, Justice, concurring and dissenting.

I agree that the challenged zoning ordinance is unconstitutional. However, that is the only thing in the majority opinion with which I can agree.

Firstly, I see no legitimate reason to apply a different standard of review to zoning ordinances which explicitly exclude certain uses, than the standards applied to ordinances which exclude by implication. Thus, I would hold that the "fair share" principle announced in *Surrick v. Zoning Hearing Board of Township of Upper Providence,* 476 Pa. 182, 382 A.2d 105 (1977) is relevant to cases such as this.[1] *See Appeal of Girsch,* 437 Pa. 237, 241, 263 A.2d 395, 397 (1970) ("At least for the purposes of this case, the

1. In *Surrick v. Zoning Hearing Board of the Township of Upper Providence,* 476 Pa. 182, 382 A.2d 105 (1977), this Court said:
 [It is a] basic proposition that a political subdivision cannot isolate itself and ignore the housing needs of the areas surrounding it. To implement these concepts, we adopted the "fair share" principle, which requires local political units to plan for and provide land-use regulations which meet the legitimate needs of all categories of people who may desire to live within its boundaries.
 *Id.,* 476 Pa. at 189, 382 A.2d at 108.

failure to provide for apartments anywhere within the Township must be viewed as the legal equivalent of an explicit total prohibition of apartment houses in the zoning ordinance.").

Therefore, if a zoning ordinance explicitly or implicitly excludes the construction of multi-family dwellings, a presumption of unconstitutionality would be raised and the burden shifted to the municipality to prove that the exclusion bears some relation to the public health, safety, morals, or general welfare. *Cf. Exton Quarries, Inc. v. Zoning Board of Adjustment of West Whiteland Township*, 425 Pa. 43, 228 A.2d 169 (1967) (imposing similar burden on township which totally excludes business uses). That presumption could, however, be rebutted by a showing that the municipality and the region surrounding it were not logical areas for growth and development; or that the subject municipality was already highly developed. *Surrick, supra*, 476 Pa. at 192, 382 A.2d at 110.

In the present case, the Board of Supervisors concluded as a matter of law that Schuylkill Township was not a logical area for growth and development. This conclusion was based upon findings of fact such as the following: the township is less accessible to major employment centers than other municipalities in the region; the projected population growth for the township by 1980 is less than 1,000 people; other municipalities in the region will have more rapid population increases than will Schuylkill Township; there are no specific plans to increase employment in the township, although such plans do exist on a county-wide basis; the Delaware Valley (consisting of Bucks, Chester, Delaware, Montgomery and Philadelphia counties in Pennsylvania and Burlington, Camden, Gloucester, and Mercer counties in New Jersey) will experience no population growth between 1978 and 2000; the township is outside the Philadelphia metropolitan area; and, there is no need for high density housing in the township.

When reviewing a zoning appeal it is not our function to be fact finders. However, it is our function to ensure that

there is evidence in the record to support the findings made below. In addition, we are required to review the legal conclusions arrived at by the lower tribunals, as well as the standards which they applied. *Commonwealth ex rel. Gibson v. DiGiacinto,* 497 Pa. 66, 439 A.2d 105 (1981). On this record there does appear to be some support for the above findings. However, while I believe the learned Judge Stively adequately weighed the facts presented, I conceive a larger area for comparison than the one utilized by the learned court.

Although we have not precisely defined the concept of a logical area for growth, our prior decisions have made it clear that a municipality may not stand in isolation. The municipality and the region surrounding it must be studied as a whole. *See Appeal of Elocin, Inc.,* 501 Pa. 348, 461 A.2d 771 (1983), *Appeal of M.A. Kravitz Co., Inc.,* 501 Pa. 200, 460 A.2d 1075 (1983). Among the factors to be analyzed are the following: the distance, both in miles and in driving time, from major urban areas; the accessibility of public transportation including regional high-speed rail lines; the proximity of industrial parks, corporate headquarters, and other sources of employment opportunity; the distance from major highways; and population trends in both the municipality and in surrounding municipalities that might logically and realistically be considered to be part of the region.[2]

In this case the board and the lower courts focused so narrowly on Schuylkill Township as to ignore all the evidence in the record that demonstrated that the area surrounding this enclave is constantly growing. That evidence established that Schuylkill Township is less than one hour's

2. For example, Schuylkill Township is located in a large region often called the Delaware Valley which is generally considered to include four counties in New Jersey across the Delaware River from Philadelphia in addition to the five counties in south-eastern Pennsylvania. However, it is probably unlikely that those four New Jersey counties would have much of a direct impact upon the demand for housing in Schuylkill Township. On the other hand, neighboring municipalities in Chester, Delaware, and Montgomery counties would almost certainly affect that demand.

driving time from center city Philadelphia and that it is on the edge of the Philadelphia Standard Metropolitan Statistical Area. Furthermore, it is located within minutes of the Pennsylvania Turnpike, the Schuylkill Expressway, the King of Prussia office and retail complex,[3] and the developing high-technology corridor along Route 202. There are large industrial parks and regional headquarters of major corporations located in nearby townships. A township in such a region cannot be said to be in an area of no growth or one that will be immune from suburban expansion.

On the issue of prior development within the township the Board of Supervisor made no factual findings. However, the record indicates that as of 1965 apparently 70% of the township was either farm land or was undeveloped. Approximately 17% was residential consisting mostly of houses built in the 1930's and 1940's. Industrial and commercial areas accounted for less than 1% of the township's land.[4]

On this record I would conclude that the zoning ordinance of Schuylkill Township as it existed in April of 1975, fostered an unconstitutional exclusion.

On the remaining issue of remedy I strongly disagree with the majority's discussion of Section 1101 of the Municipalities Planning Code (M.P.C.)[5]

That section sets forth factors to be considered by courts when awarding relief. The section provides in part:

§ 1011 Judicial Relief.

(1) In a zoning appeal the court shall have power to declare any ordinance or map invalid and set aside or

---

3. Ten years prior to the commencement of the present controversy this Court decided *National Land and Investment Company v. Easttown Township Board of Adjustment,* 419 Pa. 504, 215 A.2d 597 (1965). In the opinion we noted "a market for residential sites is being generated by the fast growing industrial-commercial complex in the King of Prussia-Valley Forge area to the north of Easttown Township." 419 Pa. at 519, 215 A.2d at 605. (Easttown Township is in eastern Chester County to the south of Schuylkill Township).

4. Schuylkill Township: A Development Plan, pp. 2–6 to 2–10. (Exhibit A–24).

5. Act of October 5, 1978, P.L. 1067, No. 249, § 2 *et seq.,* 53 P.S. § 11011.

modify any action, decision or order of the governing body, agency or officer of the municipality brought up on appeal, only if it determines that:

(a) the municipality has not acted in good faith or made a bona fide attempt in the adoption of its ordinances or maps, or any amendments thereto, to meet the statutory and constitutional requirements for nonexclusionary zoning; ...

(2) If the court, in accordance with the standards provided in subsection (1), finds that an ordinance or map or a decision or order thereunder which has been brought up for review unlawfully prevents or restricts a development or use which has been described by the landowner through plans and other materials submitted to the governing body, agency or officer of the municipality whose action or failure to act is in question on the appeal, it may order the described development or use approved as to all elements or it may order it approved as to some elements and refer other elements to the governing body, agency or officer having jurisdiction thereof for further proceedings, including the adoption of alternative restrictions, in accordance with the court's opinion and order. In issuing its order the court shall consider the following: (i) the locational suitability of the site for the uses proposed including the general location of the site with regard to major roads, sewer facilities, water supplies, schools and other public service facilities *or the comprehensive plan and zoning ordinance of the municipality and the county if they exist;* (ii) the impact of the proposal on regional housing needs, the transportation network, and the other public services and facilities; (iii) the suitability of the site for the intention of use proposed by the site's soils, slopes, woodland, wetlands, flood plains, aquifers, natural resources and other natural features; (iv) the impact of the proposed use on the site's soils, slopes, woodlands, wetlands, flood plains, natural resources and natural features, the degree to which these are protected or destroyed, the tolerance of the resources to develop-

ment and any adverse environmental impacts; and (v) the impact of the proposal on the preservation of agriculture and other land uses which are essential to public health and welfare. (Emphasis added.)

. . . . .

53 P.S. § 11011. Appellants have argued, and the majority agrees, that this section is inapplicable to the present case since it was not effective until 1978. However, Section 8 of Act 249, provides that the procedures established by 53 P.S. § 11011(2) shall apply to substantive challenges that are within the jurisdiction of any court on the effective date of the act.[6] The majority inexplicably ignores this fact, and concludes that appellants have a substantive right to develop their property in derogation of this Act. Such an interpretation is simply erroneous and should not be allowed to stand.

The majority further concludes that in deciding the question of remedy, our holding in *Casey v. Zoning Hearing Board of Warwick Township*, 459 Pa. 219, 328 A.2d 464 (1974), prevents the lower court from considering any ordinance or regulation which was not in effect at the time of their initial challenge. I cannot agree with this conclusion.

In *Casey,* the basis of this Court's decision was the recognition "that an applicant, successful in having a zoning ordinance declared unconstitutional should not be frustrated in his request for a relief by a *retributory* township." *Id.,* 459 Pa. at 228, 328 A.2d at 468 (emphasis added). The Court was obviously seeking to protect a

**6.** Section 8 provides:
Section 8. (a) Anything in this act to the contrary notwithstanding the procedures established by section 1011 of this act shall apply to substantive challenges within the jurisdiction of any court on the effective date of this act.
(b) it is hereby declared that the provisions of subsection (a) are found to be needed to alleviate the problems caused by uncoordinated development of municipalities and are essential to the maintenance of the health, safety and welfare of the residents of the Commonwealth.

landowner from a municipality which would "penalize [him as] the successful challenger." *Id.*

Today's decision has carried *Casey* to an absurd extreme by mandating the approval of a huge multi-family complex, situated in the middle of a single-acre-zoned community, based on the rather fortuitous circumstance that the absentee owner of this land arrived at the court house prior to an apparently well-intentioned zoning amendment.

I do not believe that the Court in *Casey,* anticipated such a result. However, even if such a result was intended, the absurdity of it mandates a modification of this absolute rule. Communities should be permitted to make a good faith attempt to amend their ordinances, without having a possible white elephant foisted upon them to forever remind them of their past errors. *See Casey, id.* Dissenting Opinion, Jones, C.J.

I would therefore allow the court of common pleas to take into account the present zoning of appellants' tract as one of the factors to be considered when determining an appropriate remedy.

ZAPPALA, J., joins in the dissenting portion of this opinion.

ZAPPALA, Justice, concurring and dissenting.

I join with the Court in ruling that the zoning ordinance challenged in this case is invalid. Because the ordinance explicitly prohibits multi-family dwellings as a permitted use this case is governed by our decisions in *Girsh Appeal,* 437 Pa. 237, 263 A.2d 395 (1970) and *National Land and Investment Co. v. Easttown Township Board of Adjustment,* 419 Pa. 504, 215 A.2d 597 (1965). A finding that an ordinance explicitly prohibits a given use operates to place a heavy burden on the municipality to prove that the ordinance bears a "more substantial relationship" to a legitimate public purpose (health, safety, morals, general wel-

fare), more substantial, that is, than would be necessary to support a zoning provision generally. *See, e.g., Beaver Gasoline Co. v. Osborne Borough,* 445 Pa. 571, 285 A.2d 501 (1971); *Exton Quarries Inc. v. Zoning Board of Adjustment,* 425 Pa. 43, 228 A.2d 169 (1967). This burden was clearly not met.[1]

I disagree with the Majority, however, as to the remedy applicable upon this finding of a violation. The Majority cites language from *Casey v. Zoning Hearing Board of Warwick Township,* 459 Pa. 219, 328 A.2d 464 (1974), to the effect that a successful litigant is entitled to relief which recognizes the propriety of his challenge, rewards his efforts in testing the legality of the ordinance, and prevents "retributive" action by the municipality which would correct the illegality but leave the challenger unbenefitted. To proceed directly from this unobjectionable language to the statement that "[a]ccordingly, *Casey* governs the instant litigation and mandates that appellants be permitted to develop their property *as proposed,* subject to reasonable restrictions, *regardless of how that land is currently zoned,"* at 421–422 (emphasis added), is to "answer" the question presented by avoiding it.

Some four years after our decision in *Casey,* the legislature amended the Municipalities Planning Code to enumerate the factors to be considered by courts in fashioning relief where it was found that a zoning ordinance was invalid. Act of October 5, 1978, P.L. 1067, No. 249, § 6, *amending* Act of June 1, 1972, P.L. 333, No. 93, 53 P.S.

1. Unlike the Majority, I think it relevant to examine whether the area was a logical place for growth and development and the related question whether the area was already highly developed. *Surrick v. Zoning Hearing Board of Upper Providence Township,* 476 Pa. 182, 382 A.2d 105 (1977). These initial inquiries of the *Surrick* analysis, preceding what may properly be characterized as the fair share test, set the background against which the reasonableness of a challenged ordinance can be assessed. Though highly unlikely, the possibility must not be foreclosed that an area might be so highly developed, or have such other peculiar characteristics, that even an explicit prohibition could survive scrutiny.

§ 11011(2). The Majority eviscerates this statute by simplistically tagging the factors enumerated with the label "fair share analysis" and reiterating the previous discussion that "fair share analysis" is inapplicable to cases of explicit prohibition. It is undeniable that the considerations mandated by the statute greatly resemble the elements of the "fair share analysis." The resemblence does not, however, demonstrate that the legislature sought to impose the "fair share analysis" on all cases. It is, I believe, no more than a reflection of the fact that both the statute and our case law on "fair share" revolve around the fundamental purposes of valid zoning enactments.

It would appear that the purpose of this statute was to maintain the integrity of the overall local plan of development while at the same time allowing a successful challenger the benefit of proceeding with some development contrary to the specific zoning plan which has been invalidated. (It should be noted that the statute does not permit a remedy wherein the challenger would reap no benefit from his challenge. The options available to the court are to "order the described development or use approved as to all elements or [to] order it approved as to some elements and refer other elements to the governing body ..." 53 P.S. § 11011(2).) Without analysis the Majority disapproves this legislative balancing of interests and applies prior case law, with drastic results, so aptly described by Justice McDermott. This, although the avoidance of such results was likely the impetus for the legislation. By requiring the virtually total approval of a development without regard for the character of the region as it exists, the Majority thwarts the legislative purpose of this statute, indeed, the purpose of zoning legislation generally—to provide for growth and efficient use of land and resources according to a rational, comprehensive regional plan for development.

McDERMOTT, J., joins in the dissenting portion of this concurring and dissenting opinion.