555 A.2d 948

H & R Builders, Inc., Appellant *v.* The Borough Council of The Borough of Norwood, Appellee.

Argued December 15, 1988, before Judges CRAIG and BARRY, and Senior Judge NARICK, sitting as a panel of three.

*John P. Trevaskis, Jr.,* with him, *Richard C. Slama, Jr.,* for appellant.

*Barry C. Dozor,* with him, *Marnie L. Burk,* for appellee.

OPINION BY JUDGE CRAIG, March 9, 1989:

This court must now revisit the question of whether a zoning ordinance which totally prohibits townhouses, while allowing other classes of multi-family dwellings, is invalid as *de jure* exclusionary in the absence of a specific police power justification being established by the municipality, without the necessity of applying the "fair share" test laid down for *de facto* exclusions in *Surrick v. Zoning Hearing Board of Upper Providence Township*, 476 Pa. 182, 382 A.2d 105 (1977).

Alternatively, this court must consider whether a municipality's total prohibition of junkyards or "auto

graveyards" is invalid as an exclusion of a "legitimate business" under *Exton Quarries, Inc. v. Zoning Board of Adjustment*, 425 Pa. 43, 228 A.2d 169 (1967).

Finally, if the conclusion is that an invalid exclusion does exist in this case, the court will have to consider the question of whether the landowner is entitled to site-specific relief in accordance with *Casey v. Zoning Hearing Board of Warwick Township*, 459 Pa. 219, 328 A.2d 464 (1974).

## History and Facts

H & R Builders, Inc., landowner of 2.2 vacant acres in a Residence District established by the Zoning Ordinance of Norwood Borough, filed a curative amendment proceeding under sections 609.1 and 1004 of the Pennsylvania Municipalities Planning Code, Act of July 31, 1968, P.L. 805, *as amended*, 53 P.S. §§10609.1, 11004, with the Borough Council of Norwood Borough, based upon a proposal, in the alternative, to construct either twenty-three townhouse units or a junkyard on the property, contending that the borough zoning ordinance is exclusionary because its section 801 expressly declares that, in the borough, "no permit shall be issued or permission given for the construction" of "solid row houses," and because its section 90-17(B) of the ordinance also expressly prohibits "auto graveyards."

There is no dispute that the concept of "row house" is synonymous with townhouse, *i.e.*, three or more dwelling units attached side by side. Nor do the parties dispute that an auto graveyard and a junkyard are synonymous.

After conducting hearings, the borough council held the ordinance to be valid, and adopted verbatim the objectors' requested findings as its own findings and also adopted verbatim the objectors' brief as embodying the analysis and conclusions with which the council agreed.

Accordingly, the borough council denied the land-owner's curative amendment request and affirmed the validity of the zoning ordinance. The Court of Common Pleas of Delaware County, to which the landowner appealed, affirmed the decision of the borough council.

## 1. Validity of Blanket Prohibition of Townhouses

With respect to the questions of law in this case, the Pennsylvania Supreme Court's most recent and most authoritative decision and opinion is in *Fernley v. Board of Supervisors of Schuylkill Township*, 509 Pa. 413, 502 A.2d 585 (1985). That case involved a township zoning ordinance which absolutely prohibited all multi-family dwellings. The opinion of Mr. Justice HUTCHINSON, for a majority of the court, posed the question and stated the answer as follows:

> We are now confronted with the question of whether a fair share analysis must be employed to assess the exclusionary impact of zoning regulations which totally prohibit a basic type of housing. We hold that the fair share analysis is inapplicable to this Schuylkill Township zoning ordinance which absolutely prohibits apartment buildings.

509 Pa. at 417-18, 502 A.2d at 587. The opinion proceeds to explain that "the fair share" test of *Surrick* relates to "zoning ordinances which effect a partial ban that amounts to a *de facto* exclusion of a particular use, as distinguished from those ordinances which provide for a total or *de jure* exclusion." 509 Pa. at 418, 502 A.2d at 587-88. Such de facto or partially exclusionary issues turn on "the question of whether the provision for a particular use in the ordinance at issue reasonably accommodates the immediate and projected demand for that use," 509 Pa. at 419, 502 A.2d at 588; hence,

certain factors influencing population growth become relevant to the question of whether a zoning ordinance which already allows a particular and basic type of housing stock in designated areas is nevertheless impermissibly exclusionary because the amount of housing of that type permitted under the ordinance is unfairly limited when compared to the immediate and projected demand for it. See Surrick . . . .

509 Pa. at 419, 502 A.2d at 588. The *Fernley* opinion then proceeds to point out that the fair share principle is irrelevant "when the challenged zoning regulation totally excludes a basic form of housing such as apartments." The Supreme Court reasoned that demand for housing is not necessarily related to population growth, adding that there may be many families who presently desire to live in a particular municipality "but who are effectively zoned out of the community because they cannot afford to purchase either a single-family house or a duplex." Mr. Justice HUTCHINSON concluded:

Accordingly, Schuylkill Township's contention that its zoning ordinance does not exclude anyone because population projections show little or no growth in the community is untenable.

509 Pa. at 420, 502 A.2d at 588.

*Fernley* reversed this court's decision in the same case at 76 Pa. Commonwealth Ct. 409, 464 A.2d 587 (1983), where our court had noted that *Appeal of M. A. Kravitz Co., Inc.*, 501 Pa. 200, 460 A.2d 1075 (1983), and *Appeal of Elocin, Inc.*, 501 Pa. 348, 461 A.2d 771 (1983), although not controlling because both of those cases involved plurality opinions of the Supreme Court, nevertheless appeared to be consistent with a Supreme Court majority consensus "that the fair share population-growth

analysis is applicable even to a prohibition which is total." 76 Pa. Commonwealth Ct. at 416, 464 A.2d at 590.

However, the Supreme Court's *Fernley* opinion clearly negated the deductions which we attempted to draw from the various opinions and votes in *Kravitz* and *Elocin*; as noted above, our highest court held that the fair share analysis is inapplicable when there is a total exclusion of "a basic form of housing such as apartments."

Therefore, the pivotal question in this case is whether townhouses constitute a "basic form" of housing.

If such a category does constitute a basic form of housing, then there is a "total prohibition of a legitimate use" and "the burden shifts to the municipality to establish that the prohibition promotes public health, safety, morals and general welfare." *Fernley*, 509 Pa. at 418, 502 A.2d at 587. On the other hand, if we must regard the broader category of multi-family dwellings as the "basic form," then, in a municipality such as Norwood Borough, which makes some provision for apartment buildings as well as two-family dwellings, townhouses would constitute only a fraction of the basic multi-family dwelling form, and the exclusion would be only partial.

Historically, the Commonwealth Court has regarded townhouses as a basic form of housing ever since *Camp Hill Development Co. v. Zoning Board of Adjustment of the Borough of Dauphin*, 13 Pa. Commonwealth Ct. 519, 319 A.2d 197 (1974), which held, for the first time on an appellate level, that an absolute prohibition of townhouses was unconstitutional because, by so doing, the "ordinance unreasonably fails to provide for a legitimate and needed residential use." In that case, the Dauphin Borough Ordinance, like the ordinance here, expressly prohibited townhouses anywhere in the municipality but did allow apartment buildings in some districts.

In *Ellick v. Board of Supervisors of Worcester Township*, 17 Pa. Commonwealth Ct. 404, 333 A.2d 239 (1975), where the ordinance also prohibited townhouses but allowed apartment houses, this court also held that an ordinance which "totally prohibits townhouses, a legitimate and needed residential use . . . is invalid under the Pennsylvania Supreme Court's holding in Girsh . . . ," referring to *Girsh Appeal*, 437 Pa. 237, 263 A.2d 395 (1970). We were, and are, mindful that *Girsh* involved a total prohibition of all multi-family dwellings.

In the same year, this court squarely confronted the question of housing categories in *Appeal of Robert P. Olson*, 19 Pa. Commonwealth Ct. 514, 338 A.2d 748 (1975). There, where the municipality allowed some apartment buildings but totally prohibited townhouse development, Judge KRAMER, for the Commonwealth Court, stated:

> We fully recognize that there are so many architectural types or styles of residential housing, that it would be difficult, if not impossible, for a municipality to cover every conceivable design in its zoning ordinance . . . . But, as we review the law established in this Commonwealth, townhouses (which are nothing more than row houses in a more modern design) are a reasonable, legitimate and recognized residential usage and a municipality must provide for such usage unless the municipality is able to sustain the burden of proving that the failure to so provide is related to the public health, welfare and safety.

19 Pa. Commonwealth Ct. at 519-20, 338 A.2d at 750-51. Thus, although this court recognized that zoning ordinances need not provide for exotic styles which are neither recognized nor needed, we held that the total exclusion of townhouses was invalid. *Dublin Properties v.*

*Upper Dublin Township*, 21 Pa. Commonwealth Ct. 54, 342 A.2d 821 (1975) and *Westrum Enterprises v. Upper Dublin Township*, 21 Pa. Commonwealth Ct. 51, 343 A.2d 685 (1975), followed, also holding that a zoning ordinance totally prohibiting townhouses is unconstitutional.

Then in *Berger v. Board of Supervisors of Whitpain Township*, 31 Pa. Commonwealth Ct. 386, 376 A.2d 296 (1977), where the ordinance also permitted multiple dwellings with the exception of townhouses or row houses, this court interpreted the ordinance as totally prohibiting townhouses and held it to be invalid, rejecting an implausible contention that townhouses could be built in the *industrial* district by special exception.

Next, in *Lower Gwynedd Township v. Provincial Investment Co.*, 39 Pa. Commonwealth Ct. 546, 395 A.2d 1055 (1979), this court continued to hold that "the Girsh principle applied equally to a failure to provide for townhouses." 39 Pa. Commonwealth Ct. at 550, 395 A.2d at 1057. *Lower Gwynedd Township* allowed apartments and garden apartments but excluded townhouses, not by an express prohibition, but by failing to make any provision for them among the permitted uses.

In the Commonwealth Court's opinion in *M. A. Kravitz Co., Inc. Appeal*, 53 Pa. Commonwealth Ct. 622, 419 A.2d 227 (1980), *reversed*, 501 Pa. 200, 460 A.2d 1075 (1983), this court reviewed all of the previous Commonwealth Court decisions, listed above, and distinguished between ordinance provisions allowing garden apartments and multi-family dwellings constituting single operating units, on the one hand, and prohibiting townhouse development on the other hand.

However, when the Pennsylvania Supreme Court reversed our court's decision in *Kravitz*, the three-justice plurality opinion did not appear to base the decision upon

negation of townhouses as a basic form. Indeed, that issue was put aside when the opinion stated:

> Whether a community could permissibly *prohibit* a given use (in the sense of a particular architectural design) is a question which is not presented by this case. We suspect that the Exton Quarries rationale standing alone might control that question. The question which this case presents is whether a community must affirmatively provide for a particular architectural design in its plan for development. In no case has this Court held that a municipality's zoning ordinance must affirmatively provide for *any* specific use—residential, commercial, industrial, or otherwise. Our holdings have been limited to statements that an ordinance may not prohibit certain uses, because total prohibitions 'cannot be premised on the fundamental reasonableness of allocating to each type of activity a particular location in the community.' Exton Quarries, 425 Pa. at 59, 228 A.2d at 179.
> . . . We have never found an ordinance unreasonable solely because it fails to provide for a particular use. We will not do so here.

501 at 210-11, 460 A.2d at 1081. The declared distinction between prohibiting a given use, on the one hand, and failing to provide for a particular use, on the other hand, is an elusive one. Zoning ordinances, as regulations, do not "affirmatively provide" for any use because they control development rather than mandate it. As illustrated by the townhouse-excluding ordinances reviewed in the Commonwealth Court cases, some ordinances expressly prohibit townhouses or row houses, while other ordinances, declaring that no use is allowable unless expressly listed, effect equivalent prohibitions by not listing townhouses or row houses as a permitted use.

The Supreme Court's *Kravitz* decision indicated a different rationale for its result; it used an approach which did not require a determination as to whether townhouses constituted a basic form of housing, by an express conclusion that the Commonwealth Court had erred in interpreting the ordinance as prohibiting townhouses, and by a determination that the municipality's own interpretation, which was that townhouses were allowable, was correct.

In addition however, the *Kravitz* plurality opinion specifically disagreed with Commonwealth Court's reading of *Girsh* as holding an ordinance to be invalid because it failed to provide for the apartment house category. The plurality pointed out that this court should not have focused "on apartments as a legitimate residential use" because, in doing so, this court "ignored the factual element of Girsh which made the failure to provide for such uses unreasonable i.e., the exclusion of population growth." 501 Pa. at 208, 460 A.2d at 1080. On the other hand, while one justice of the Supreme Court simply concurred in the result, the second group of three justices expressly approved the categorization by this court, which had followed its long standing line of decisions on that point, as recited above.

A similar division of the Supreme Court appeared in *Appeal of Elocin*, with the plurality opinion declaring that a prohibition of townhouses is an exclusion which is partial, and not total. The plurality opinion in *Elocin* stated that:

> Where a municipality provides for a reasonable
> share of multi-family dwellings, as Springfield has
> done, it need not provide for every conceivable
> subcategory of such dwellings.

501 Pa. at 353, 461 A.2d at 773. However, a second group of three justices again disagreed, evincing support of the

proposition that townhouses are a distinct and legitimate residential use, the total exclusion of which can result in invalidity of the ordinance without invoking the necessity of pursuing the fair share test.

Although a rigid consistency is not always the correct course, this court, not having yet received a definitive indication from the Supreme Court that we should depart from a consistent line of our decisions, must conclude that our obligation is to follow precedent until authoritative direction emerges to call for a different result.

Accordingly, the conclusion must be that the borough council and the trial court were not entitled to rely upon the fair share analysis in concluding that Norwood is entitled to exclude townhouses because it is not a logical area for development and population growth.

Therefore, the prohibition of townhouses is an invalid exclusion unless the municipality has sustained the burden of showing a police power justification. On this record, the borough has not offered, nor do the objector's requested findings, as adopted by the borough, contain any basis for concluding that the borough met its burden of justifying its total exclusion of townhouses by establishing a need to do so for the protection of public health, safety or welfare.

Accordingly, under the Supreme Court's decision in *Fernley,* the ordinance is invalid insofar as it excludes townhouses, and the landowner is entitled to relief in that respect.

## 2. *Total Exclusion of Junkyards*

Although this landowner has also pursued, as an alternative claim, the right to site-specific relief to establish a junkyard in this residential district on the ground that the municipality has totally and therefore illegally excluded junkyards, there is a possibility that the landowner has tendered the junkyard demand chiefly as an *in*

*terrorem* alternative. In any event, this court's conclusion with respect to the townhouse claim, that the developer is entitled to proper relief in terms of a right to proceed with the townhouse development, may render unnecessary any further pursuance of the junkyard claim.

We nevertheless record our agreement with the trial court's characterization of the junkyard exclusion as total, *i.e.*, *de jure*, not *de facto*, so that

> where a zoning ordinance totally excludes a use
> within a municipality, the Court must determine
> whether or not the exclusion is valid because the
> use is objectionable or illegitimate by nature.

For that correct proposition, the trial court cited *Township of Paradise v. Mt. Airy Lodge, Inc.*, 68 Pa. Commonwealth Ct. 548, 449 A.2d 849 (1982). The trial court also proceeded correctly to conclude that a junkyard is a legitimate use, citing *Commonwealth v. Christopher*, 184 Pa. Superior Ct. 205, 132 A.2d 714 (1957). We do note that, in examining Findings 75-84, holding that a junkyard or automobile graveyard on H & R's property would be objectionable, the borough council and the trial court leaped over the question of whether total exclusion of junkyards *from the entire borough* was supported by police power considerations as described in *Appeal of Green & White Copter*, 25 Pa. Commonwealth Ct. 445, 360 A.2d 283 (1976), and went directly to the matter of relief under section 1102(2) of the MPC, which deals with the appropriateness of according relief on the applicant's specific site.

Therefore, the conclusion must be that the ordinance also is invalid insofar as it excludes junkyards entirely from the borough, in that the record contains no basis for such a blanket exclusion from the municipality, but leaving the question of whether relief for a junkyard proposal can be accomplished on the applicant's property as a

matter for future review and consideration if any ultimate rejection of the townhouse proposal causes that alternative to be germane rather than moot.

### 3. Relief With Respect to the Townhouse Exclusion

In *Fernley*, the Pennsylvania Supreme Court reaffirmed the concept of site-specific relief established in *Casey v. Zoning Hearing Board of Warwick Township*, 459 Pa. 219, 328 A.2d 464 (1974), by stating:

> Accordingly, Casey governs the instant litigation and mandates that appellants be permitted to develop their property as proposed, subject to certain reasonable restrictions, regardless of how that land is currently zoned.
>
> Nevertheless, we believe that approval of the developer's plan is not automatic, but, instead, must be predicated on the suitability of the proposed site and various health and safety considerations. As Commonwealth Court explained in its decision in Ellick v. Board of Supervisors, 17 Pa. Commonwealth at 411-12, 333 A.2d at 244-45:
>
> . . . The governing body may, however, subject the landowner's submitted plans to reasonable restrictions as may be otherwise properly provided for in its ordinance. To put it another way, the successful challenger will still be required to abide by all of the reasonable building requirements, density restrictions, safety measures, sewage regulations, and water requirements, as well as all other reasonable zoning, building, subdivision and other regulations generally applicable to the class of use or construction proposed by the landowner.

509 Pa. at 421-23, 502 A.2d at 590.

In *Fernley*, the Supreme Court held that section 1011(2) of the MPC, *as amended* in 1978 by the Act of

October 5, 1978, P.L. 1067, §6, effective immediately, after the *Fernley* proceedings had begun, would therefore involve "a retroactive application of section 1011(2) fair share provisions" which would be inappropriate in fashioning the relief. Interestingly enough, that subsection of section 1011 of the MPC has now been eliminated in the most recent amendment of the MPC, by Act No. 170, December 21, 1988, §101, which very recently became effective on February 20, 1989; the new section is section 1006A(c) which reads as follows with respect to relief:

> (c) If the court finds that an ordinance . . . which has been brought up for review unlawfully prevents or restricts a development or use which has been described by the landowner through plans and other materials submitted at the governing body . . . whose action or failure to act is in question on the appeal, it may order the described development or use approved as to all elements or it may order it approved as to some elements and refer other elements to the governing body, agency or officer having jurisdiction thereof for further proceedings, including the adoption of alternative restrictions, in accordance with the court's opinion and order.

The extensive references, previously in section 1011(2), with respect to the locational suitability of the site with regard to public facilities, the impact of the proposal on various community elements, the suitability of the site, the impact of the proposed use upon the site, and other factors, have been eliminated from the relief rules to be applied by the court, and they now appear in section 609.1(c), which deals with factors to be considered by a governing body which has determined that a validity challenge has merit.

In view of the Supreme Court's attitude expressed in *Fernley*, 509 Pa. at 424, 502 A.2d at 591, that the list of environmental impact factors in former section 1011(2) of the MPC (and the present section 609.1) embodies a fair share analysis, that path to relief is not applicable here whether we regard the MPC as governing in its present or former wording.

What is applicable is the Supreme Court's description of relief in *Fernley*, which adopted with approval the Commonwealth Court's *Ellick* language that the proposed development may be established by the successful challenger on its own property, but subject to reasonable restrictions.

Accordingly, our remand order will be framed to follow and apply the *Ellick* concept of relief as approved by the Supreme Court in *Fernley*.

## ORDER

NOW, March 9, 1989, the order of the Court of Common Pleas of Delaware County at No. 86-9930, dated January 26, 1988, is reversed, and this case is remanded to the trial court for the granting of relief permitting the appellant to establish a townhouse development upon its designated property, subject to the applicable reasonable building requirements, density restrictions, safety measures, sewage regulations and water requirements, as well as all other reasonable zoning, building subdivision and other regulations generally applicable to residential uses.

Jurisdiction relinquished.